**Wade TIMMONS and Innovative Development Management Corp., Plaintiffs,**

v.

**CITY OF HARTFORD, Defendant.**

**No. CIV.3:02CV1570 (AWT).**

United States District Court, D. Connecticut.

Sept. 16, 2003.

W. Martyn Philpot, Jr., Marc L. Glenn, Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for plaintiffs.

Joseph W. McQuade, Jennifer L. Dixon, Kainen, Escalera & McHale, PC, Hartford, CT, for defendant.

### RULING ON MOTION TO DISMISS

THOMPSON, District Judge.

The plaintiffs, Wade Timmons ("Timmons") and Innovative Development Management Corp., a company owned and operated by Timmons, bring the following claims against the defendant, City of Hartford (the "City"): (1) a claim that the defendant violated the plaintiffs' rights under 42 U.S.C. § 1981, (2) a claim for breach of contract, and (3) a claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq.* The complaint also includes claims for negligent and intentional infliction of emotional distress, but in their opposition to the defendant's motion to dismiss, the plaintiffs withdrew these two claims. The defendant has moved to dismiss the three remaining claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the defendant's motion is being granted and the complaint is being dismissed in its entirety.

### I. FACTUAL BACKGROUND

The complaint includes the factual allegations set forth below, and the court accepts these factual allegations as true for purposes of testing the sufficiency of the complaint.

Timmons is African American, and he owns and operates Innovative Development Management Corp., which is a general contracting business. The City is a municipality of the State of Connecticut. The plaintiffs and the defendant have worked together on real estate projects for approximately 14 years. Some of their collaborative efforts included housing rehabilitation projects.

In 1985, the plaintiffs acquired a six-unit apartment building located on Magnolia Street with the intention of restoring and renting the units. The plaintiffs secured financing from the City's Department of Housing and Community Development under its Rental Rehabilitation Program; they also secured funding from the Capitol Housing Finance Corporation. The plaintiffs entered into an agreement with Project Control, as the contractor, to rehabilitate the property; the City was also a party to the agreement. The agreement provided that the plaintiffs, as the owners, had the right to terminate the contractor if it failed to conform to the work schedule or job specifications, or if it performed defective work.

In November 1991, the plaintiffs terminated Project Control for failing to pay its subcontractors, performing defective work, and permitting windows and plumbing equipment to be stolen from the worksite. At that time the defendant issued a verbal work-stop order for the Magnolia Street property. The plaintiffs requested that they be allowed to continue work on the project in the capacity of a designated successor contractor pursuant to the City's Department of Housing and Community Development regulations, which provided that a "homeowner may make the repairs and improvements if he/she is a full-time General Contractor by profession." The defendant denied the plaintiffs' request. The City stated that it would also withhold loan proceeds until the dispute between the plaintiffs and Project Control was settled. The plaintiffs allege that no provision in the agreement supported the defendant's action.

In January 1992, Project Control filed a lawsuit against the plaintiffs, which was dismissed in December 1992. However,

during the pendency of Project Control's lawsuit, the plaintiffs informed the defendant that they intended to seek reimbursement for all costs and expenses, including taxes, interest, and insurance premiums, that they had paid in connection with the Magnolia Street project. In or about May 1993, the defendant issued a verbal order to restart work on the project. In August 1993, however, the defendant issued a work-stop order for the project. Five months later, the plaintiffs sent a letter to the defendant seeking reimbursement for costs and expenses.

The plaintiffs tried to resolve the outstanding issues so the Magnolia Street project could be completed, but the defendant did not respond to their inquiries and did not select or approve a successor contractor. The defendant permitted the project to remain unfinished, which cost the plaintiffs over $500,000.00. This amount represents the costs and expenses for work on the apartment building and the loss of revenue for the rental units for which the plaintiffs had secured commitments.

The plaintiffs subsequently secured another loan through the City's Rental Rehabilitation Program to finance a rehabilitation project on Garden Street. The plaintiffs also took out a personal loan from HEDCO and "arrangements were made for HEDCO to be paid directly by the City . . . ." Compl. ¶ 21.

As each portion of the Garden Street project was completed, a building inspector for the City was to come out to the site to approve it. During the inspector's second visit, the inspector ripped up the contract and stated that a new contract would have to be drawn up because the project was a "replacement rather than a repair job." The contract was never rewritten. Although the plaintiffs had overrun several line items in the budget and borrowed from other line items, they contend that this was a common practice in renovation projects in the City and, therefore, the contract should have been rewritten.

In or about September 1997, the plaintiffs submitted to the City an invoice for $27,000 for work that had been approved by the defendant's inspectors. The plaintiffs were told that they could not be paid in a timely fashion because there was a shortage of money. The plaintiffs inquired about the invoice over the following two and one-half months and were told by one of the inspectors that the check was on its way. The plaintiffs later called the City's Housing Analyst and learned that the invoice had never been received for payment. The plaintiffs obtained a personal loan in order to continue the Garden Street project. The plaintiffs contend that, as a result of the defendant's failure to pay the invoice and other expenses and costs, they were thrown into a "financial quagmire."

## II.  *LEGAL STANDARD*

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support

thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Circ.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683).

## III. *DISCUSSION*

### A. *42 U.S.C. § 1981 Claim*

The plaintiffs' claim pursuant to 42 U.S.C. § 1981 is being dismissed because it is barred by the statute of limitations and also because it fails to state a claim upon which relief can be granted.

### 1. *The Statute of Limitations*

Although Section 1981 does not specify a limitations period, the United States Supreme Court held that causes of actions brought under Section 1981 should be governed by a state's personal injury statute of limitations because Section 1981 claims are most analogous to personal injury claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). The Court rejected the argument, made here by the plaintiffs, that the appropriate time limitation for Section 1981 claims is the statute of limitations governing contract actions. *Id.* at 661–62, 107 S.Ct. 2617. The Court reasoned that Section 1981 protects not only contractual rights but protects the "personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property." *Id.* at 661, 107 S.Ct. 2617.

The Second Circuit has concluded that Connecticut's personal injury statute of limitations, Conn. Gen.Stat. § 52–577, governs Section 1981 claims. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 131 (2d Cir.1996), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *See also Hall v. South Central Connecticut Regional Water Authority*, 28 F.Supp.2d 76, 83 (D.Conn.1998), *aff'd*, 201 F.3d 431 (2d Cir.1999). Connecticut's personal injury statute of limitations, Conn. Gen.Stat. § 52–577 (2003), provides that a claim must be brought "within three years from the date of the act or omission . . . ." The statute of limitations commences running when the "conduct causes harm and the claimant knows or has reason to know of the conduct and the resulting harm." *Halpern v. Bristol Bd. of Ed.*, 52 F.Supp.2d 324, 329 (D.Conn.1999), *aff'd*, 208 F.3d 203 (2d Cir.2000). *See also Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir.1994).

The plaintiffs had three years in which to file their complaint from the time the statute of limitations began to run on their Section 1981 claim. However, the plaintiffs waited over four years to file their complaint. The statute of limitations started to run as to the Magnolia Street project in 1994 when the defendant failed to reimburse the plaintiffs for the costs of the Magnolia Street project. The statute of limitations started to run as to the Garden Street project when the inspector ripped up the contract and failed to rewrite it, or at the latest, in late 1997 when the defendant failed to pay the plaintiffs after telling them the invoice had never been received. Because the plaintiffs did not file this action within the three-year statute of limitations as to either of these projects, their claim pursuant to Section 1981 is time-barred and must be dismissed.[1]

---

1. A claim for violation of § 1981 rights by a    state actor must be pled as a § 1983 claim

### 2. Plaintiffs Have Failed to Allege Sufficient Facts to State a Section 1981 Claim.

To establish a claim under 42 U.S.C. § 1981, the plaintiffs must allege facts supporting the following three elements: (1) that the plaintiffs are members of a racial minority; (2) that the defendant intended to discriminate against the plaintiffs on the basis of their race; and (3) that the defendant discriminated concerning one of the statute's enumerated activities. *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir.1999), *cert. denied*, 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001). Section 1981 only prohibits intentional racial discrimination. *Id. See also General Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (stating that Section 1981 "can be violated only by purposeful discrimination"); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993) (stating that an essential element in a Section 1981 claim is that the alleged discrimination took place because of the individual's race). The enumerated activities in Section 1981 include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a) (2003).

It is undisputed that the plaintiffs satisfy the first element. As to the third element, the defendant contends that the plaintiffs have not identified any of the rights enumerated in Section 1981. Section 1981 "prohibits certain kinds of discrimination in the making and enforcement of contracts, including contracts of employment." *Anderson v. Conboy*, 156 F.3d 167, 169 (2d Cir.1998). The plaintiffs' attempt to enforce an alleged contractual relationship with the City is an enumerated right covered by Section 1981. The remaining question, then, is whether the plaintiffs have sufficiently alleged facts showing that the defendant intended to discriminate against the plaintiffs on the basis of race.

For a Section 1981 claim to survive a motion to dismiss, the plaintiffs must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 827 F.Supp. 952 (S.D.N.Y.1993), *aff'd*, 35 F.3d 709, 713 (2d Cir.1994). A complaint consisting of nothing more than naked assertions and setting forth no facts upon which a court could find a violation of Section 1981 fails to state a claim under Rule 12(b)(6). *See Martin v. New York State Dep't. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978). The plaintiffs may allege purposeful discrimination by "specifying instances in which they were 'singled ... out for unlawful oppression' in contrast to others similarly situated." *Albert v. Carovano*, 851 F.2d 561, 571–72 (2d Cir.1988).

The plaintiffs allege that the defendant discriminated against them because of their race, but they provide no factual allegations in support of this claim. On the other hand, the plaintiffs provide

based on a violation of § 1981. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Because the City is a municipality of the State of Connecticut, the plaintiffs should have pled their § 1981 claim under § 1983. *Anderson v. Conboy*, 156 F.3d 167, 176 n. 17 (2d Cir.

1998). However, even if the plaintiffs had properly pled their claim, it would nonetheless be barred by the applicable statute of limitations since § 1983 claims are also governed by a state's personal injury statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

several reasons why the City took adverse action against them, i.e., the defendant issued the work-stop orders because of Project Control's lawsuit against the plaintiffs, the plaintiffs overran their budget and improperly borrowed from other line items, and the City's building inspector discovered that the plaintiffs' replacement project did not comply with the terms of the contract, which provided for a repair job. Nowhere in the complaint do the plaintiffs state that the defendant took action against them because of racial discrimination. Moreover, the plaintiffs do not indicate which other similarly situated non-minority contractors, if any, were treated differently. Drawing all reasonable inferences in the plaintiffs' favor, one cannot conclude that the defendant's actions had anything to do with the plaintiffs' race. Accordingly, the defendant's motion to dismiss the Section 1981 claim must also be granted on this basis.

### B. *Breach of Contract Claim*

The plaintiffs allege that the defendant breached its "oral promises and/or written agreements" to promptly pay the plaintiffs' outstanding invoices for the Garden Street property. The plaintiffs' breach of contract claim is being dismissed as to both the alleged oral promises and the alleged written agreements.

### 1. *Claim Based on Oral Promises*

■ The statute of limitations for oral contracts is Conn. Gen.Stat. § 52–581. A breach of contract claim based on oral promises must be brought "within three years after the right of action accrues." Conn. Gen.Stat. § 52–581 (2003).

The plaintiffs claim that the defendant made oral promises to promptly pay all outstanding invoices in connection with the Garden Street project. The plaintiffs allege that in September 1997 they submitted an invoice for their work on the project. The plaintiffs did not receive any payment. The plaintiffs inquired about the invoice over the next two and one-half months, and they were told by the City that the check had been sent. However, the plaintiffs still did not receive the check. The plaintiffs then called the City again and were told that the invoice had never been received and, therefore, the plaintiffs could not be paid.

Based on the allegations in the complaint, the last acts of the defendant occurred, at the latest, at the end of 1997 when the defendant told the plaintiffs that they could not be paid. This was over four years before the plaintiffs filed their complaint. However, the statute of limitations requires that a breach of contract claim based on oral promises be brought within three years after the right of action accrues. Since the plaintiffs filed this action beyond the three-year limitations period, their breach of contract claim based on oral promises is time-barred.

### 2. *Claim Based on Written Agreements*

■ In order to state a breach of contract claim, the plaintiffs must allege (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. *Maloney v. Connecticut Orthopedics, P.C.*, 47 F.Supp.2d 244, 249 (D.Conn.1999) (citing *Posner v. Minnesota Mining & Manufacturing Co.*, 713 F.Supp. 562 (E.D.N.Y.1989)). In asserting a breach of contract claim, the complaint must allege the provisions of the contract upon which the claim is based. *Posner*, 713 F.Supp. at 563. In determining whether a breach has been alleged, the court must look to the language of the contract. *See HLO Land Ownership Associates Ltd. Partnership v. City of Hart-*

*ford,* 248 Conn. 350, 356–57, 727 A.2d 1260 (1999).

■ The plaintiffs allege that the defendant breached its "oral promises and/or written agreements" to pay the outstanding invoices for the Garden Street project. The defendant contends that there was no formation of an agreement and, therefore, no breach of contract.

Construing the complaint in the light most favorable to the plaintiffs, the plaintiffs' fail to allege the provisions of the written agreements upon which their claim is based. The plaintiffs simply allege that "arrangements were made for HEDCO to be paid directly by the City." They fail to specify any provision of any written contract or agreement upon which liability is predicated, and, in fact, fail to specify any written contract or agreement at all, or any specific information that would help identify such a written agreement. The plaintiffs' vague allegations fall well short of alleging the provisions of the written agreement upon which the claim of breach is based. Accordingly, the plaintiffs' breach of contract claim based on any written agreements must be dismissed.

### C. *CUTPA Claim*

The plaintiffs allege that the actions of the defendant "in discriminating against the plaintiff[s] were in the nature of a deceptive act in the course of business or trade, as they falsely and/or materially misrepresented the plaintiff[s'] professional abilities, as they claimed that plaintiff[s] had 'performance problems' as a pretextual basis for their refusal to do business with the plaintiffs" and thus were in violation of CUTPA.

■ CUTPA provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or com-

merce." Conn. Gen.Stat. § 42–110b (2003). The statute of limitations for a CUTPA claim is three years. Conn. Gen. Stat. § 42–110g(f). *See City of West Haven v. Comm'l Union Insurance Co.,* 894 F.2d 540, 546 (2d Cir.1990) ("the three-year limitations period applies to [a] CUTPA claim"). A CUTPA violation occurs when the misrepresentation is made and the statute of limitations commences running the moment the act or omission complained of occurs.

■ Based on the allegations in the complaint, the last acts of the defendant occurred, at the latest, at the end of 1997 when the City's Housing Analyst told the plaintiffs that the invoice had not been received and the plaintiffs could not be paid. Thus, the acts or omissions complained occurred more than four years before the plaintiffs filed this action. Accordingly, the defendant's motion to dismiss the plaintiffs' CUTPA claim must be granted because that claim is barred by the applicable statute of limitations.

### IV. *CONCLUSION*

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. # 9) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.